IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

KELVIN A. CANADA, )
)
    Plaintiff, ) Civil Action No. 7:10cv00432
)
v. ) MEMORANDUM OPINION
)
RICKY FANNIN, et al., ) By: Samuel G. Wilson
) United States District Judge
    Defendants. )
)

This is a 28 U.S.C. § 1983 action brought *pro se* by inmate Kelvin A. Canada for damages resulting from a disturbance at Red Onion State Prison ("ROSP"). Canada alleges that his Eighth Amendment right to be free from cruel and unusual punishment[1] was violated by ROSP correctional officers Ricky Fannin, J. Barrett, R. Gibson, and J. Nale during an incident in which Canada was wrestled to the ground and subdued with rubber bullets fired from a guard tower. The defendants have filed motions for summary judgment in which they assert that they are entitled to qualified immunity against Canada's claims. Because there are no allegations by Canada of conduct by the defendants which violates a clearly established constitutional or statutory right of which a reasonable person would have known, the defendants are protected by qualified immunity and summary judgment is granted in their favor.

---

[1] In his complaint, Canada alludes to various other claims and requests for relief, including a mention of the Fourteenth Amendment and a request for declaratory relief. However, his Eighth Amendment claim and accompanying requests for damages and injunctive relief is the only claim put forth with any clarity. As this Court has said before, "Federal Rule of Civil Procedure 8(a)(2) requires a 'short and plain statement of the claim showing that the pleader is entitled to relief.' Though the rule is greatly relaxed for *pro se* plaintiffs, it does not require a court to endeavor to discern coherence where there is none . . . ." Canada v. Johnson, No. 7:11-cv-00369 (W.D. Va. August 16, 2011). This Court's denial of Canada's request for injunctive relief is set forth in a separate opinion.

### I.

The relevant facts in the light most favorable to Canada are these:[2] on April 17, 2010, Canada was confined to a "rec-cage" in the ROSP recreation yard. Officer Fannin approached Canada's rec-cage and ordered him to hand over some dice that Fannin had seen Canada using in the rec-cage. Canada refused, and the two men began arguing. Fannin then asked Officers Barrett and Gibson for the keys to Canada's rec-cage. Fannin took the keys from Gibson and, in violation of prison policy, removed the lock from the rec-cage without first shackling Canada. Then, in Canada's words, Fannin "swung open the [the] rec-cage door and hit Plaintiff on his left shoulder." (Compl. 7, ECF No. 1.) This caused Canada to "defend himself." (Compl. 9, ECF No. 1.) At this point, Barrett and Gibson moved to assist Fannin. At the same time, Nale fired several rubber bullets at Canada, striking him three to four times. Canada was then taken for medical evaluation and treated for redness on his right shin, and for abrasions under his left eye, on his right hip, and on his right forearm. (Ex. 1, ECF No. 1.)

### II.

Defendants assert that they are entitled to qualified immunity. Under the doctrine of qualified immunity, "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A court must determine whether any right was

---

[2] Summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The court views the facts in the light most favorable to the nonmoving party. Henry v. Purnell, 501 F.3d 374, 377 (4th Cir. 2007). In qualified immunity cases, this generally requires the court to adopt the plaintiff's version of the facts. Iko v. Shreve, 535 F.3d 225, 230 (4th Cir. 2008).

2

violated and also whether that right was clearly established. See Miller v. Prince George's Cnty., 475 F.3d 621, 626–27 (4th Cir. 2007). Courts may exercise discretion in deciding which of the two prongs to address first. Pearson v. Callahan, 555 U.S. 223, 226 (2009).

A.

Canada's version of events with respect to Fannin is somewhat murky. Canada alternately asserts that (1) Fannin swung open the rec-cage door and struck Canada, which caused Canada to defend himself, (2) that Fannin "deliberately took the lock off Plaintiff's rec-cage which caused the Plaintiff to defend himself," (3) that Fannin tried "to assault and attack [Canada by taking] the rec-cage lock off," and (4) that Fannin tackled Canada. (Compl. 7, 15, 17, ECF No. 1; Def. Video Ev., ECF No. 86.) In addition, in a video taken during medical treatment,[3] Canada says that Fannin "opened that damn rec-cage . . . and I whooped his ass." (Def. Video Ev., ECF No. 86.) Canada goes on to say in the video, "He opened up that cage and I was supposed to stand there? Ain't gonna happen." (Id.) After wading though these assertions, it appears to this Court that, at best, Canada can claim that Fannin used excessive force in violation of the Eighth Amendment by striking Canada on the shoulder when the rec-cage door swung open.[4] The Court will proceed accordingly.

---

[3] "Where, as here, the record contains an unchallenged videotape capturing the events in question, we must only credit the plaintiff's version of the facts to the extent it is not contradicted by the videotape." Iko, 535 F.3d at 230. Here, the plaintiff's complaint appears to be in conflict with the unchallenged videotape. Still, this Court gives Canada the benefit of the doubt and confines its analysis to the most serious allegations made in Canada's complaint.

[4] In his complaint, Canada places great emphasis on the fact that Fannin violated ROSP policy by opening the rec-cage door without first restraining Canada. However, a defendant's violation of a state law or regulation is generally irrelevant to the decision of qualified immunity. See Davis v. Scherer, 468 US 183, 191–94 (1984). Likewise, Canada repeatedly mentions Fannin's supposed intent upon his opening of the cage. But, in the context of qualified immunity, a court should "not consider the officer's intent or motivation." Jones v. Buchanan, 325 F.3d 520, 527 (4th Cir. 2003) (quoting Elliot v. Leavitt, 99 F.3d 640, 642 (4th Cir. 1996)).

3

The Eighth Amendment does not prohibit all application of force or infliction of pain. United States. v. Gore, 592 F.3d 489, 494 (4th Cir. 2010). "The infliction of pain in the course of a prison security measure . . . does not amount to cruel and unusual punishment simply because it may appear in retrospect that the degree of force authorized or applied for security purposes was unreasonable, and hence unnecessary in the strict sense." Id. (quoting Whitley v. Albers, 475 U.S. 312, 319 (1986)). Rather, excessive force is characterized by "obduracy and wantonness, not inadvertence or error in good faith, . . . whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." Id. Thus, these determinations turn on "whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the purpose of causing harm." Id. Moreover, while the United States Supreme Court has "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim," the absence of a serious injury is not irrelevant. Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010).

Canada's version of events does not demonstrate that Fannin acted maliciously and sadistically. By Canada's own admission, Fannin ordered Canada to turn over a set of dice. Canada responded by saying that "he's not giving [Fannin] no dice." (Compl. 4, ECF No. 1.) From there, the situation escalated. In violation of prison policy, Fannin entered the cage without first restraining Canada. However, because it involves no application of force to the inmate, merely removing the lock and entering the cage violates no constitutional or statutory rights. Canada's only *conceivable* claim of excessive force by Fannin is that when the door swung open, Fannin struck Canada on the shoulder. As poor a choice by Fannin as this may seem in retrospect, it cannot legitimately be characterized as conduct that exceeds the force

4

allowed by the Eighth Amendment. Though "unnecessary in the strict sense," the alleged application of force was made in the course of an attempt to restore prison discipline. And that force resulted in no injury to Canada, much less a serious one. Indeed, the only injuries complained of by Canada were those resulting from the rubber bullets fired by Nale. The facts alleged by Canada do not reveal malicious, sadistic, or grossly disparate conduct by Fannin—only poor choices made in the course of an attempt to restore order. Accordingly, Fannin violated no clearly established constitutional or statutory right by striking Canada on the shoulder, and Fannin is entitled to the protection afforded by qualified immunity.

### B.

Canada claims that defendants Gibson and Barrett violated Canada's Eighth Amendment rights when "they stood by consciously and watched their co-worker Ricky Fannin deliberately take the rec-cage lock completely off the . . . rec-cage with the sole intent to assault and attack Plaintiff." (Compl. 21–22, ECF No. 1.) This Court disagrees. Canada was in no objective danger when Fannin opened the rec-cage door. Any number of scenarios could have developed, including Canada's handing over the dice, or his being peaceably restrained and returned to the cell block. Moreover, as soon as Canada and Fannin began to scuffle, Barrett and Gibson acted immediately to intervene. The Eighth Amendment does not presuppose clairvoyance. By merely standing by as Fannin unlocked the rec-cage, Barrett and Gibson cannot be said to have violated any clearly established constitutional or statutory rights, and they are therefore entitled to qualified immunity.

### C.

Canada claims that defendant Nale used excessive force when Nale shot Canada with rubber bullets during the altercation. This Court disagrees. During the incident, Nale was

5

stationed in a guard tower and armed with a firearm loaded with nonlethal rubber bullets. His assignment was to use those rubber bullets to restore the status quo when violence or serious disorder erupted in the recreation yard. Even in Canada's version of events, Nale only opened fire after Fannin and Canada came to blows. The shooting resulted in three abrasions and one red mark for which Canada was prescribed ibuprofen and artificial tears. Force used in a good-faith effort to restore prison discipline is not force that exceeds that allowed by the Eighth Amendment. Nale only acted in accordance with his assignment, and not maliciously or sadistically for the purpose of causing harm. He therefore cannot be said to have violated any clearly established constitutional or statutory rights. Thus, Nale is entitled to the protection of qualified immunity.

### III.

Even viewing the facts in the light most favorable to Canada, this Court is unable to reasonably characterize the defendants' conduct as violating the Cruel and Unusual Punishment Clause of the Eighth Amendment. Nor is the conduct violative of any other clearly established constitutional or statutory right of which the defendants should reasonably have been aware. Thus, the defendants are entitled to qualified immunity and summary judgment is entered in their favor.

Entered this 1st day of September, 2011.

_____
UNITED STATES DISTRICT JUDGE